An answer that the legatee at testator's death owed him more than the legacy has the same effect. Smith v. Murray, 1 Dem. 34; Charlick's Estate, 11 Abb. N. C. 56; Hurlburt v. Durant, 88 N. Y. 121.

The insufficiency or informal nature of the answer filed was waived by the petitioner failing to object to the answer. Matter of Corbett, 90 Hun, 182.

The testamentary trustee should file a supplemental account showing the total amount of interest accruing upon such trust fund, and should pay the amount remaining unpaid to the petitioner; in all other respects the petition should be dismissed without prejudice to an action on behalf of the petitioner for the purpose of determining his rights.

Decreed accordingly.

---

CHARLES P. KIRKPATRICK, Overseer of the Poor, Respondent, *v.* JOHN CROWLEY, Appellant.

(County Court, Rockland County, April, 1897.)

1. Bastardy — When child a charge on town.

> The fact that the mother of a bastard child is unable to and has not supported it, but it has been sustained entirely by its maternal grandparents is sufficient to make it a charge on the town and to authorize the overseer of the poor to make complaint and give the court jurisdiction.

2. Same — New proceeding where disagreement has been had.

> Where the justices before whom a hearing has taken place have disagreed, the complainant has a right to discontinue the proceeding and lodge a new complaint with another justice of the town.

3. Same — Institution of new proceeding a discontinuance of the old.

> No formal motion or entry in the justice's minutes is necessary to discontinue the proceeding in such a case, but the act of the complainant in instituting the new proceeding operates as a discontinuance of the former.

4. Same — Order of filiation.

> Evidence sufficient to justify an order of filiation.

APPEAL from order of filiation.

G. Z. Snider, for appellant.

R. S. Harvey, for respondent.

TOMPKINS, J.   The defendant was first arrested charged with being the father of a bastard child born of Annie Doyle, on a warrant issued by William W. Whyard, a justice of the peace of the town of Orangetown.   The justice associated with himself another magistrate and proceeded to try the case, and at the close of the evidence were unable to agree and made the following entry in the docket: "The justices were unable to agree that the defendant is the father of the child."   No further proceedings were taken before those justices.

Thereafter and on the 7th day of November, 1896, the overseer of the poor commenced the present proceeding before Justice Cook of the same town, who associated with himself Justice Cooper. These magistrates tried the defendant, adjudged him to be the father of the bastard child and ordered that he pay the sum of $2 per week for the support of the child so long as it shall remain chargeable, etc.

The defendant gave an undertaking under subdivision 2 of section 851 of the Criminal Code and thus has an appeal in this court.

The defendant here contends that it does not appear that the bastard child is chargeable to the town of Orangetown.   The Code (§ 839) makes the father and mother of a bastard liable for its support, and further provides: "In case of their neglect or inability it must be supported by the county, city or town in which it is born."

21

County Court, Rockland County, April, 1897. [Vol. 20.

The child was born in the town of Orangetown, and has ever since been in that town. It appears that the father, whoever he may be, has neglected to support the bastard, and the mother, it appears, is unable to support it and has not; the maternal grandparents having hitherto supported it and the mother.

This, I think, was sufficient to make it chargeable to the town of Orangetown and to justify the overseer of the poor in making the complaint and give the court jurisdiction.

The further claim is made that the justices had no jurisdiction to make the order appealed from; the reason assigned by the appellant being that the matter was still pending before the other magistrates.

As has already been stated, the defendant was first arrested on a warrant issued by Justice Whyard, and proceedings were thereafter had which resulted in a disagreement of the justices. No result was reached. This cannot be said to have been a trial. It was a mistrial, and although there is no special provision authorizing a new complaint before another justice, the complainant undoubtedly had a right to discontinue the proceedings before the justices who had disagreed and lodge a new complaint with another justice of the same town. It would have been useless to have tried the case again before the same magistrates, and it would have been unauthorized by law and manifestly unfair for Justice Whyard to have called in a new justice as an associate and proceeded to a retrial, because he (Whyard) had already formed an opinion one way or the other regarding the merits of the controversy. But it is claimed by the defendant and appellant that it does not appear that the former proceeding was discontinued or withdrawn. I do not deem it necessary that any formal motion or entry in the justice's docket be made. The fact that there was a mistrial and that the proceeding there was abandoned and a new complaint made and proceeding instituted, in itself constituted a discontinuance of the former action. The plaintiff's action in instituting this proceeding may be construed as a discontinuance of the former.

On the merits of the case, I find against the defendant; the testimony of the female is convincing of its truthfulness. The fact of intercourse at the times stated by her are not denied by the defendant.

According to the table computing the period of gestation (contained in vol. 2 of Am. & Eng. Ency. of Law, 156), the date of birth, September 11, 1896, indicates that the intercourse which

brought about the conception took place between the 5th day of December, 1895, and the 27th day of February, 1896. The proof on the part of the People is conclusive that for about two years prior to February 9, 1896, the defendant was a frequent visitor at the mother's house; quite as often as twice a week, and on almost every occasion sexual intercourse was indulged in. She had no other visitors at the house. Defendant was her regular and steady company.

The only testimony against this proof was given by the defendant's brother, Stephen, to the effect that on several occasions, and particularly in November and December, 1895, he had sexual intercourse with her on the roadside in South Nyack. He is not positive about the dates. The weather was certainly cold when the act is alleged to have occurred in December. It is quite improbable that in December weather this act would take place out of doors on the ground.

It appears that Stephen never called upon the girl at her home as did the defendant, nor is there proof of such intimacy between them as in any wise to corroborate his testimony.

The defendant evidently considered himself to be the father of the child from the letter which he wrote, and which is in evidence, advising what means to use before the child was born to rid herself of the trouble.

There are other matters which throw discredit upon the testimony of Stephen. The testimony of Thompson and Ginter is of a very unsatisfactory character.

I find the defendant to be the father of the bastard child, and the order of filiation is accordingly affirmed.

Order affirmed.